ARKANSAS RAILROAD *v.* WINTERS.

Opinion delivered November 17, 1924.

1. CARRIERS—LIABILITY FOR FREIGHT—DELIVERY AT DESTINATION.— The liability of a common carrier ceases with delivery at point of destination, according to the directions of the shipper or the usage and custom of the trade at the destination.

2. CARRIER—LIABILITY FOR LOSS OF FREIGHT.—Where logs, delivered to defendant carrier, consigned to shipper at specified place in care of a connecting carrier, to be transported by the latter in accordance with a previous arrangement between the shipper and the connecting carrier, were delivered by defendant and accepted by such connecting carrier, defendant was thereby relieved from liability for their subsequent destruction.

Appeal from Lincoln Circuit Court; *T. G. Parham,* Judge; reversed.

*A. J. Johnson,* for appellant.

Delivery had been made by appellant of the logs at the point of destination, before the fire occurred, and such delivery discharged appellant from further liability.   100 Ark. 37; 131 Ark. 153, at 163; 38 Minn. 95.   The logs had been delivered on the tracks of the Missouri Pacific railroad, and were beyond appellant's line of road, and it could not be held liable in damages under such circumstances.   115 Ark. 20.   While a carrier is an insurer of goods during transportation and for a reasonable time thereafter (60 Ark. 375), the rule is

relaxed when delivery is made, and the burden is imposed on the shipper. 100 Ark. 43.

*Brockman & Lucas,* for apppellee:

There was not a sufficient or reasonable time allowed appellee after the so-called delivery to the Missouri Pacific in which to have the logs moved, before their destruction, and appellant cannot escape liability. 100 Ark. 37; 131 Ark. 163. At any rate it was a disputed question of fact and one for the jury. 99 Ark. 568; 60 Ark. 375. A finding by a jury will not be disturbed where there is substantial evidence to support it. 153 Ark. 598; 144 Ark. 227.

Wood, J. This is an action by the appellee against the appellant to recover damages for the loss of thirty logs, which appellee alleges he delivered to the Gould Southwestern Railway Company and the appellant, its successor, for shipment to the McLean-Arkansas Lumber Company at Little Rock, Arkansas. Appellee alleges that the logs were damaged by fire at Gould, Arkansas, in the sum of $211.48, for which he prayed judgment.

The appellant answered, denying the allegations of the complaint, and set up that the appellee delivered to the appellant two cars of logs consigned to himself at Gould, in care of the Missouri Pacific Railway tracks; that the appellant transported the cars and delivered same in good order on the Missouri Pacific tracks at Gould, and the appellee accepted the delivery and paid the freight to the appellant. Appellant alleged that, if the cars were damaged by fire, such damage occurred after the delivery had been effected as alleged, and that its liability to the appellee had therefore ceased.

The testimony of the appellee was to the effect that he shipped the logs over appellant's line to Gould. They were billed to appellee at Gould, in care of the Iron Mountain Railroad. The appellee had been making shipments before the one in controversy, and the agents of the appellant had always delivered to the appellee bills of lading from the Missouri Pacific for these shipments. The appellee understood that the appellant was

to deliver the cars to the Missouri Pacific Railroad and receive a bill of lading, and return the same to the appellee. The logs were burned on the night of the day the appellee shipped them—the 24th of February, 1922.

On cross-examination appellee identified a bill of lading that was given to him by the appellant, which shows the point from which the cars were shipped and the point of destination, and that they were consigned to appellee in care of the Missouri Pacific Railroad; that represented the only written contract between the appellee and the appellant. Appellee had told the agent of the Missouri Pacific at Gould to issue bills of lading, and Forbes, the agent of the appellant, would bring the bill of lading from the Missouri Pacific back to the appellee, after Forbes had delivered the logs to the Missouri Pacific. Appellee had told the Missouri Pacific agent at Gould where he wanted the logs to go, and had given him shipping instructions—had been doing that for some time. There was no instruction in writing. Forbes had done this on other shipments for the appellee before. There was nothing said about these particular cars. Witness signed the bill of lading, and thought that Forbes understood. The appellant had nothing to do in connection with the cars, except to deliver them to the Missouri Pacific. On the day the logs were delivered to the appellant, when Forbes returned that afternoon he told the witness that the Missouri Pacific had said they could not accept the logs; that they were not wired properly; that, later, the agent told him (Forbes) that the Missouri Pacific would accept the shipment. The agent of the appellant notified the appellee at the time that the cars had been placed on the Missouri Pacific tracks and what the Missouri Pacific agent said about them. Forbes told the appellee that the Missouri Pacific agent had accepted the cars for shipment, but the agent denied it.

On redirect examination appellee testified that the bill of lading which he received from the appellant did not have on it "in care of Missouri Pacific tracks." Appellee stated that it was the custom of the appellee,

in hauling and shipping logs over the Missouri Pacific, for the appellant to put the logs across to the Missouri Pacific tracks when they arrived at Gould. The appellant used the tracks on the north side of the main tracks of the Missouri Pacific, whether it was taking the consignment in or out. The cars which were burned were over at this track. Appellee stated that, on the particular occasion when the logs were burned, the appellant had not carried out appellee's instructions to get a bill of lading from the Missouri Pacific and deliver it to the appellee. Appellee was never notified by the appellant that the Missouri Pacific would not receive the logs. The logs went over to Gould on Friday, and appellee heard they were burned on Monday. Appellee was trying to ship the logs to Little Rock. Appellee was selling the logs f. o. b. at Gould, and the logs had to be rebilled from Gould. The Missouri Pacific had been doing that for appellee. Appellee had told the Missouri Pacific agent at Gould how he wanted the logs to go. It was no part of the duty of Forbes, the agent of appellant, to give instructions for the reshipment of the logs. Appellee concluded his testimony by stating that, in shipping the logs over appellant's line, he did so with the understanding that the appellant would ship the logs to Gould and turn them over to the Missouri Pacific, and get the bill of lading from the Missouri Pacific and deliver the same to the appellee.

Forbes testified that he was the general manager of the appellant. He issued a bill of lading for the cars in controversy. The bill of lading in this case did not have ''Care of Missouri Pacific'' on it at the time he delivered the same to the appellee. The only instruction that witness had, under the contract and bill of lading, was to deliver to the appellee at Gould the logs in controversy. The appellee did not furnish the appellant with any shipping directions from Gould. The cars were at Gould on the day they were shipped, in good order. When witness delivered the cars to the Missouri Pacific, the agent of that company first said that he would not

receive them because they were not properly wired. Before witness left Gould, however, the agent stated that he would try to get the cars through, but told witness in the future to put five wires on the cars. Witness stated that appellee asked him to get bills of lading from the Missouri Pacific, and witness had done that before, but it was no part of his duty. Appellee gave witness no instructions except those contained in the bill of lading. ¡Witness delivered the cars in question to the Missouri Pacific in good order at 2:10 o'clock in the afternoon of the day they were shipped. Witness brought back to the appellee from the agent of the Missouri Pacific complaint about the manner in which the cars were wired, and delivered to appellee a letter from the Missouri Pacific agent to that effect. Witness never furnished any shipping directions to the Missouri Pacific, because he had none. The reshipping was done for the appellee by the Missouri Pacific. The contract of appellant was fulfilled when witness delivered the cars on the Missouri Pacific tracks. Witness didn't offer the cars to the Missouri Pacific with directions for reshipment, because he had no such directions. He put the cars in the yard, and notified the appellee that they were there and in good order.

On cross-examination witness stated that, a time or two in previous shipments, appellee had made out a bill of lading at Firth and witness took it to Gould, had it signed by the Missouri Pacific, and returned it to appellee. As to these particular logs, witness delivered them on Friday to the Missouri Pacific. He didn't say anything to the Missouri Pacific about rebilling them at all. He put them there, and the agent said that he could not accept them. Appellee had given instructions to the Missouri Pacific agent in regard to the reshipping, and if the agent issued a bill of lading for the reshipment, witness would carry it back to the appellee, but witness didn't have a thing in the world to do with the reshipment. If the witness received a carload of logs for delivery at Gould, with no further instructions, witness

would determine to whom they were billed, and, if billed to the shipper, witness would put them on the Missouri Pacific tracks, if he were asked to do that. Before witness left the cars on the Missouri Pacific tracks, the Missouri Pacific agent told witness that he would get these cars out on the local, and witness further explained that the appellant had shipped thirty-one cars for the appellee consigned to appellee at Gould. Witness supposed that the cars in controversy were to be reconsigned or reshipped beyond Gould, and hence he placed the same on the Missouri Pacific tracks at 2:10 in the afternoon, as before stated, and the same were burned the next morning at 2:35. There was no rule between the Arkansas Railroad and the Missouri Pacific as to the time the cars should be put on the Missouri Pacific tracks in order for the Missouri Pacific to receive them. Witness delivered them when he got there. Witness had a daily schedule, running first to Gould in the morning and back in the afternoon, which appellee knew; that was the schedule he had been shipping logs on before, and the same on which these logs were shipped. Witness understood a shipping order on which the original bill of lading was issued, made out by the appellee in the same manner as the other bills on which the other logs were delivered, and he delivered these in the same way that those were delivered. Witness had shipped thirty-one cars before the one in controversy, and they had all gone to a certain place. The only instructions witness had was to deliver the car of logs to Gould, which witness did in the manner already indicated. Witness never had any instructions under the contract with the appellee to deliver the logs on the Missouri Pacific railroad track next to the house that was burned, but witness took it for granted that they were for reconsignment, like all the others, and witness expected the Missouri Pacific to issue a bill of lading and take them, and, if they had not burned, witness supposed the Missouri Pacific would have done so. The Missouri Pacific agent told witness he would get the logs out on the local the next morning.

The bill of lading issued by the appellant, introduced in evidence, among others contained the following provisions: "In issuing this bill of lading, this company agrees to transport only over its own line, and, except as otherwise provided by law, acts only as agent with respect to the portion of the route beyond its line." Also, "the carrier shall not be liable for cars, damage or delay occurring while the property is stopped or held in transit upon request of shipper," etc.

There was still a further provision: "No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed."

The jury returned a verdict in favor of the appellee in the sum of $136.48. The court rendered a judgment in favor of the appellee in that sum, from which appellant duly prosecutes this appeal.

The instructions of the court are not set forth in appellant's abstract, and the only question presented for our decision is whether the verdict is sustained by legally sufficient evidence. The substance of the testimony is set forth above, and the essential facts are undisputed. It therefore becomes a question of law as to whether the appellant is liable. In *Arkadelphia Milling Company* v. *Smoker Mdse. Co.*, 100 Ark. 37, among other things, we said: "The liability of the common carrier ceases with delivery of the goods at the point of destination according to the directions of the shipper, or according to the usage and custom of the trade at such place of destination. This delivery may be actual, or it may be constructive; and, in either case, the liability of the carrier terminates with such delivery. An actual delivery of goods is made when the possession is turned over to the consignee or his duly authorized agent and a reasonable time has been given him in which to remove

the goods. When such delivery is thus made, the carrier is fully discharged from further liability." See also *Southern Grocery Co.* v. *Bush*, 131 Ark. 153, 163.

The undisputed evidence shows that appellee delivered the logs in controversy to the appellant at Firth to be transported by the appellant to Gould, Arkansas. The cars were consigned to the appellee. They were to be delivered at Gould to the Missouri Pacific Railroad, to be by it transported to such consignee as the appellee directed. The logs were shipped to Gould for reconsignment and shipment over the Missouri Pacific railroad. The appellee testified that he had made arrangements with the Missouri Pacific agent where he wanted the logs to go, and instructed him as to shipping directions; that he had been doing this for some time. Just previous to this, thirty-one cars had been transported by appellant and delivered to the Missouri Pacific, to be reconsigned as the appellee directed. The agent of appellant received the cars in controversy and delivered same to the Missouri Pacific railroad, as he had done for the appellee before. Appellant's agent having charge of the shipment testified that he delivered the cars in good order on the Missouri Pacific tracks, and, while he states that the Missouri Pacific agent at first refused to receive the cars, he afterwards did take them for shipment, and sent a message to appellee, through Forbes, and also by letter, that the Missouri Pacific would not accept future shipments unless they were wired with five wires instead of three.

This testimony is undisputed, and the only conclusion that any reasonable mind could draw from it is that the appellant delivered the cars on the Missouri Pacific tracks, and that the Missouri Pacific accepted and agreed to transport the same for the appellee. Such being the case, under the above authorities there was no longer any liability on the part of the appellant for damage to the logs. Since there was no evidence to sustain the verdict, the judgment is erroneous, and is therefore reversed, and, since the testimony has been fully developed, the cause is dismissed.